**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

IRMA PFEIFER,

        Plaintiff,

vs.                                              No. Civ. 00-739 JP/RLP-ACE

UNITED STATES OF AMERICA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant filed Defendant's Motion for Summary Judgment Together with Supporting Points and Authorities [Doc. No. 31] on April 20, 2001. The Court, having considered the motion, memoranda, pleadings, and admissible evidence submitted by the parties, and the applicable law, concludes that Defendant's motion should be granted.

**I.**     **BACKGROUND**

This action arises from a fall on a cattle guard in the roadway to Sitting Bull Falls Recreation Area (SBFRA) in the Guadalupe Ranger District, Lincoln National Forest, New Mexico. Plaintiff sues under the Federal Tort Claims Act (FTCA), 28 U.S.C. 1346(b)(1), and concurrent New Mexico law.

On the afternoon of Sunday, July 26, 1998, Plaintiff and her husband, who are from Carlsbad, New Mexico, with their then-eleven-year-old granddaughter from California, drove in a truck to SBFRA. On July 26, 1998, SBFRA was open to the public free of charge. During summer weekends, the day area of SBFRA was often at capacity.

On the date of the accident there were two parking areas for SBFRA.  One parking area was adjacent to SBFRA and the other was one-half mile to a mile away.  When Plaintiff and her family reached the first (non-adjacent) parking area, they were stopped by Forest Service personnel.  Mr. Glenn Pfeifer, who was driving, was informed that both parking areas were full and that if they wished to visit SBFRA, they would have to park on the side of the road and walk to it.  Plaintiff asked the distance to SBFRA and was told it was about a mile.  Mr. Pfeifer turned the truck around and parked it on the side of the road.  The Pfeifers and their granddaughter then proceeded to walk along the roadway toward SBFRA.  As they walked, they saw people behind them and in front of them, walking in both directions.

At about one-quarter to one-half mile from where Mr. Pfeifer had parked the truck, they encountered a cattle guard.  The Forest Service personnel had not told them of the cattle guard's existence.  The cattle guard was of standard construction and approximately seven feet wide.  The cross bars of the cattle guard were approximately twenty feet long.  The bars were rounded and spaced six to seven inches apart, perpendicular to the roadway.  There were no hand rails and there were no flat boards laid across the bars.  According to Plaintiff's amended complaint and the deposition testimony of Mr. Pfeifer, they looked for a way around the cattle guard, but saw none. At the time of the accident there was a barbed wire fence attached to one side, or possibly both sides, of the cattle guard and large rocks on one side.  According to the deposition testimony of Mr. Mike Baca, District Ranger for the Guadalupe Ranger District of the Lincoln National Forest, immediately east of the cattle guard was a large boulder and on the other side of that boulder was "a Texas gate" (a barbed wire gate with a fastened opening).  Mr. Baca estimated the distance from the cattle guard to the gate to be forty to fifty feet.  It is unclear how obvious that gate was.

2

Mr. Pfeifer testified in his deposition that he saw no gate. The Government, in its reply, states that in addition to the gate "there was another recently opened alternative route to the Falls . . . via a foot route." Def.'s Reply at 2. However, the parties have not cited to any evidence that Plaintiff or her companions were informed of this alternative route or to any evidence about whether the alternative route should have been obvious to them.

Plaintiff's granddaughter, who is (and presumably at the time of the accident was) very tall, ran across the cattle guard quickly. Then Mr. Pfeifer began to cross, with Plaintiff following. Plaintiff was wearing size six tennis shoes. Mr. Pfeifer did not offer Plaintiff any assistance as she began to cross the cattle guard because "[i]t never entered [his] mind." Pl.'s Resp., Unlabeled Ex., Dep. of Glenn Pfeifer at 22, line 4; see id. at 21, lines 5-8 ("Q. Did you offer her any assistance?" "A. I was probably about three feet ahead of her. And we looked if there was something to hang onto, and there wasn't. And I never ** I never give it another thought."). Plaintiff lost her balance on the cattle guard, fell, and broke or fractured her wrist, hand, and/or arm. Mr. Pfeifer turned to assist Plaintiff, but both of his legs fell through the bars of the cattle guard.

Less than a week after the accident, Mr. Pfeifer returned to SBFRA to take pictures and to request the names of employees. During this visit, Mr. Pfeifer spoke with "Bear," an employee to whom he had spoken immediately after Plaintiff fell. "Bear" told Mr. Pfeifer that several people had fallen at the cattle guard. However, Mr. Baca testified in his deposition that he had not heard of any other mishaps at the cattle guard.

Plaintiff filed a complaint for damages on May 22, 2000, and an amended complaint on November 13, 2000. In her amended complaint, Plaintiff asserts that Defendant, through its

personnel, was willfully negligent in deliberately directing Plaintiff and her party across the cattle guard without regard to the consequences to Plaintiff and in failing to warn Plaintiff or other members of her party of the cattle guard, thereby creating an unreasonable risk of harm. Defendant argues that to the extent it is not immune from suit, it owed no duty of care to Plaintiff.

## II.    LEGAL STANDARD

A motion for summary judgment should be granted only when there is no genuine issue of material fact and, as a matter of law, the moving party is entitled to judgment. See Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, a court must construe the facts in the light most favorable to the non-movant. See Magnum Foods, Inc. v. Continental Casualty Co., 36 F.3d 1491, 1497 (10th Cir. 1994). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, i.e., "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Then the burden shifts to the non-movant to come forward with evidence showing that there is a genuine issue of material fact under Rule 56(e) or to explain why he or she cannot do so under Rule 56(f). See United States v. Simons, 129 F.3d 1386, 1388 (10th Cir. 1997); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). "Conclusory allegations made by a non-movant will not suffice." Simons, 129 F.3d at 1388. Nor may the non-movant "rest upon the mere allegations or denials of his [or her] pleadings to avoid summary judgment." BancOklahoma Mortgage Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1097 (10th Cir. 1999) (internal

quotations omitted); see Fed. R. Civ. P. 56(e).  Relevant, "sufficient evidence . . . must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." Simons, 129 F.3d at 1389 (internal quotations omitted).

**III.    DISCUSSION**

As a sovereign, the United States is immune from suit except to the extent its waives its immunity and consents to be sued.  See Smith v. United States, 507 U.S. 197, 200 (1993).  The United States waives its sovereign immunity when federal employees, within the scope of their employment, are found to be negligent "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C.§ 2674; id. § 1346(b)(1).  Under the FTCA, liability attaches only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Id. § 1346(b)(1).  Because Defendant's alleged negligent acts or omissions occurred in New Mexico, New Mexico law applies to this action.  This law includes New Mexico's recreational use statute, Maldonado v. United States, 893 F.2d 267, 269 (10th Cir. 1990); see Kirkland v. United States, 930 F.Supp. 1443, 1446 (D.Colo. 1996), and applicable New Mexico Uniform Jury Instructions, cf. Richards v. United States, 369 U.S. 1, 10-11 (1962) (Under the FTCA, the whole law of the place where the alleged negligence occurred applies.).

Under New Mexico's recreational use statute,

[a]ny owner, lessee or person in control of lands who, without charge or other consideration, . . . grants permission to any person or group to use his [or her] lands for [recreational purposes] does not thereby:

    (1) extend any assurance that the premises are safe for each
    purpose; or
    (2) assume any duty of care to keep such lands safe for entry or

5

> use; or
> (3) assume responsibility or liability for any injury or damage to, or
> caused by, such person or group; [or]
> (4) assume any greater responsibility, duty of care or liability to
> such person or group, than if such permission had not been granted
> and such person or group were trespassers.

N.M. Stat. Ann. § 17-4-7(A) (1995 Repl. Pamp.) (alterations added).  It is uncontested by the parties that under § 17-4-7(A), Defendant owed Plaintiff only the duty of care owed a trespasser and no more.

The duty owed a trespasser under New Mexico law when an "artificial condition" is present on the land is as follows:

> If the [owner] [occupant] creates or maintains an artificial condition on the land, then [he] [she] has a duty to a trespasser to use ordinary care to warn of the condition and of the risk involved if:
>
> > (1) The condition involves an unreasonable risk of death or bodily harm to persons coming onto the land;
> > (2) [He] [She] knows or reasonably should know [that there are constant intrusions by persons in the dangerous area] [that there are persons on the land in dangerous proximity to the condition]; and
> > (3) [He] [She] has reason to believe that the trespasser will not discover the condition or realize the risk involved.

N.M. U.J.I. Civ. 13-1305.[1]  Defendant admits that it knew visitors would be visiting SBFRA. The parties dispute (1) whether the cattle guard on which Plaintiff fell presented an unreasonable risk of bodily harm or death to visitors such as herself and (2) whether Defendant had reason to

---

[1] Plaintiff contends that New Mexico Uniform Jury Instruction 13-1306 also applies to this action. NMUJI 13-1306 instructs on the duty owed a trespasser when a landowner engages in activities, including those involving a controllable force, on his or her land. N.M. U.J.I. Civ. 13-1306.  What is at issue in the present case is an artificial condition created or maintained by Defendant, not an activity, including any use of a controllable force, of or by Defendant.  Therefore, NMUJI 13-1306 is inapplicable to the present action.  However, even assuming NMUJI 13-1306 was applicable, the same analysis applied to NMUJI 13-1305 would apply to the analysis of NMUJI 13-1306.

6

believe that Plaintiff would not discover the cattle guard or realize the risk involved.

As to the first issue, the only evidence that the cattle guard posed an unreasonable risk of bodily harm or death is Plaintiff's fall, the slipping of Mr. Pfeifer's legs through the cattle guard as he attempted to prevent Plaintiff from falling, and a general, non-specific statement made to Mr. Pfeifer by an employee of Defendant that an unspecified number of other people had fallen at the cattle guard at some unidentified time or times.  There is undisputed, contravening evidence, however, that SBFRA was a popular, much-visited recreation site; that Defendant was unaware of any formally reported mishaps regarding the cattle guard; and that on the day of the accident other visitors traversed the cattle guard with no difficulty.  Additionally, there is no evidence that cattle guards in general pose an unreasonable risk of bodily harm or death to human pedestrians or that the specific cattle guard at issue was in any way different from cattle guards generally used throughout New Mexico.  Plaintiff has failed to carry her burden of coming forward with sufficient evidence to create a genuine issue of material fact as to the unreasonableness of any risk posed by the cattle guard.  Therefore, because Plaintiff has not shown a triable factual issue as to the first element of NMUJI 13-1305, summary judgment is mandated.

Even assuming that the cattle guard did pose an unreasonable risk of harm to Plaintiff, there is no evidence that Defendant had any reason to believe that Plaintiff would not discover the harm involved in crossing it.  It is uncontested that Plaintiff knew of the presence of the cattle guard.  There is no allegation or proof that Defendant had any reason to doubt Plaintiff's ability to realize any unreasonable risk presented by the cattle guard.   Plaintiff and her family had full opportunity to evaluate the cattle guard and Plaintiff's ability to cross it, as well as to decide whether to traverse the cattle guard or inquire about other possible options.

7

Therefore, because the cattle guard at issue (1) did not involve an unreasonable risk of bodily harm or death and/or (2) because Defendant had reason to believe that Plaintiff would discover the cattle guard and realize any risk involved with crossing it, under New Mexico law Defendant owed Plaintiff no duty to use ordinary care to warn her of the cattle guard and any risk it involved.  Summary judgment will be granted as to Plaintiff's amended complaint.[2]

**IT IS ORDERED** that Defendant's Motion for Summary Judgment Together with Supporting Points and Authorities, filed April 20, 2001 [Doc. No. 31], is GRANTED.

_____
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff: Walter R. Parr, Carlsbad, New Mexico
Counsel for Defendant: Phyllis A. Dow, Assistant U.S. Attorney, Albuquerque, New Mexico

---

[2] Plaintiff contends that a landowner is not entitled to immunity under New Mexico's recreational use statute if he or she "performs intentional acts 'in utter disregard for the consequences,'" citing Rivero v. Lovington Country Club, 124 N.M. 273, 949 P.2d 287 (Ct. App. 1997).  Rivero involved New Mexico's Off-Highway Motor Vehicle Act which, unlike New Mexico's recreational use statute, includes the language "directly involved."  Having concluded that Plaintiff failed to demonstrate that elements of New Mexico's recreational use statute and NMUJI 13-1305 have been met as a matter of law, the Court need not reach the issue of whether the limitation of immunity announced in Rivero applies to actions involving New Mexico's recreational use statute.  Rivero, 124 N.M. at 276, 949 P.2d at 290 (the phrase "directly involved" in New Mexico's Off-Highway Motor Vehicle Act limits landowner immunity from liability to conduct which is negligent or grossly negligent, and excludes intentional acts in utter disregard for the consequences, but such rule "does not lead to less immunity than that provided by" New Mexico's recreational use statute).